**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| STOURBRIDGE INVESTMENTS LLC, Derivatively on Behalf of Nominal Defendant EXICURE, INC., | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| DAVID A. GILJOHANN, BRIAN C. BOCK, MATTHIAS SCHROFF, TIM WALBERT, JAMES SULAT, JEFFREY L. CLELAND, BALI MURALIDHAR, BOSUN HAU, ELIZABETH GAROFOLO, and ANDREW SASSINE, | |
| Defendants, | |
| and | |
| EXICURE, INC., | |
| Nominal Defendant. | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

By and through its undersigned counsel, Plaintiff Stourbridge Investments LLC ("Plaintiff") brings this shareholder derivative action on behalf of Nominal Defendant Exicure, Inc. ("Exicure" or the "Company") against certain of the Company's current and/or former officers and members of the Board of Directors (the "Board") seeking to remedy Defendants' (as defined below) violations of the Securities Exchange Act of 1934 (the "Exchange Act"), breaches of fiduciary duties, unjust enrichment, abuse of control, and gross mismanagement. Plaintiff makes these allegations upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes without limitation: (a) review

and analysis of public filings made by Exicure and other related parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Exicure's website concerning the Company's public statements; (d) pleadings, papers, and any documents filed with, and publicly available from, the related consolidated securities fraud class action lawsuit captioned *Colwell v. Exicure, Inc.*, Case No. 1:21-cv-06637 (N.D. Ill.) (the "Related Securities Class Action"); and (e) review of other publicly-available information concerning Exicure and the Defendants.

## **NATURE OF THE ACTION**

1.     Plaintiff brings this action derivatively for the benefit of Nominal Defendant Exicure against certain of the Company's current and former executive officers and directors aiming to rectify the Defendants' violations of the Exchange Act and breaches of fiduciary duties for issuing false and misleading statements and/or omitting material information in the Company's public filings and proxy statements from approximately January 7, 2021 to the present (the "Relevant Period").[1]

2.     Exicure is a clinical stage biotechnology company that develops therapeutics for neurology, immuno-oncology, inflammatory diseases, and other genetic disorders based on its proprietary spherical nucleic acid technology.

3.     On November 15, 2021, after the market closed, Exicure filed a Form 12b-25 with the SEC stating that it could not timely file its quarterly report for the period ended September 30,

---

[1] The materially misleading statements and/or omissions were issued in the Company's financial reports and other public filings and releases from approximately January 7, 2021 to December 10, 2021; however, the wrongs complained of herein continue through to the present as the Company's internal controls remain deficient.

2021. It explained that the Company was investigating "a claim made by a former Company senior researcher regarding alleged improprieties that researcher claims to have committed with respect to the Company's XCUR-FXN preclinical program for the treatment of Friedreich's ataxia."

4.      On this news, the Company's stock price fell $0.30, or 28%, to close at $1.07 per share on November 16, 2021, on unusually heavy trading volume.

5.      Throughout the Relevant Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there had been certain improprieties in Exicure's preclinical program for the treatment of Friedreich's ataxia; (2) that, as a result, there was a material risk that data from the preclinical program would not support continued clinical development; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims arise under and pursuant to §10(b) of the Exchange Act and Rule 10(b)-5 promulgated thereunder.

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a), as they relate to Plaintiff's claims under 15 U.S.C. §78n(a).

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), because a substantial portion of the transactions and wrongs complained of herein occurred in this District and defendants have received substantial compensation within this District by doing business here and engaging in numerous activities that had an effect in this jurisdiction.

## THE PARTIES

9.     Plaintiff has been a shareholder since the Relevant Period, is currently, and at all relevant times has been, a holder of Exicure common stock.

10.     Defendant Exicure is incorporated under the laws of Delaware and its current principal executive offices are located at 2430 N. Halsted Street, Chicago, Illinois 60614. The Company's common stock trades on the NASDAQ under the symbol "XCUR."

11.     Defendant David A. Giljohann ("Giljohann") was the Company's Chief Executive Officer ("CEO") from November 2013 until December 2021 and the Company's Chief Technology Officer since December 2021. Defendant Giljohann served as interim Chief Financial Officer ("CFO") from September 2020 to May 2021. Defendant Giljohann is named as a defendant in the Related Securities Class Action.

12.     Defendant Brian C. Bock ("Bock") was the Company's CEO and member of the Board from December 2021 to February 2022. Previously, Defendant Bock served as the Company's CFO from April 2021 to December 2021. Defendant Bock is named as a defendant in the Related Securities Class Action.

13.     Defendants Giljohann and Bock are referred collectively herein at the "Securities Action Defendants."

14.     Defendant Matthias Schroff ("Schroff") has been the CEO and a director of the Company since February 2022. Defendant Schroff was previously the Company's Chief Scientific Officer from December 2021 to January 2022 and the Company's Chief Operating Officer from April 2018 to December 2021.

15.     Defendants Giljohann, Bock, and Schroff are collectively referred to herein as the "Officer Defendants."

4

16.     Defendant Defendant James Sulat ("Sulat") has been a member of the Board since January 2021.

17.     Defendant Jeffrey L. Cleland ("Cleland") has been a member of the Board since July 2019.

18.     Defendant Bali Muralidhar ("Muralidhar") has been a member of the Board since August 2019.

19.     Defendant Elizabeth Garofalo ("Garofalo") has been a member of the Board since March 2021 and was named Chair of the Board in February 2022.

20.     Defendants Schroff, Sulat, Cleland, Muralidhar, and Garofolo, are collectively referred to herein as the "Director Defendants."

21.     Defendant Tim Walbert ("Walbert") was a member of the Board from July 2019 until he resigned on February 4, 2022.

22.     Defendant Andrew Sassine ("Sassine") was a member of the Board from March 2021 until he resigned on February 3, 2022.

23.     Defendant Bosun Hau ("Hau") was a member of the Board from August 2019 until he resigned on February 4, 2022.

24.     The Director Defendants, the Officer Defendants, and Defendants Walbert, Hau, and Sassine are collectively referred to herein as the "Individual Defendants."

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

25.     By reason of their positions as officers, directors, and/or fiduciaries of Exicure, and because of their ability to control the business and corporate affairs of Exicure, the Individual Defendants owed, and owe, the Company and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were, and are, required to use their utmost ability to control

5

and manage Exicure in a fair, just, honest, and equitable manner. The Individual Defendants were, and are, required to act in furtherance of the best interests of Exicure and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

26.     Each director and officer of the Company owes to Exicure and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.

27.     In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's financial and business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

<u>**Duties of the Members of the Audit Committee**</u>

28.     The Company's Audit Committee Charter, effective as of September 30, 2021, states that the purpose of the Audit Committee is to "oversee the Company's accounting and financial reporting processes, systems of internal control, financial statement audits and the integrity of the Company's financial statements . . . ."

29.     Specifically, the Audit Committee Charter states that the Company's Audit Committee shall (among others):

- oversee the Company's accounting and financial reporting processes, systems of internal control, financial statement audits and the integrity of the Company's financial statements;

- manage the selection, engagement terms, fees, qualifications, independence, and performance of the registered public accounting firms engaged as the Company's independent outside auditors for the purpose of preparing or issuing an audit report or performing audit services (the "Auditors");

- maintain and foster an open avenue of communication with the Company's management, internal audit group (if any) and Auditors;

- review any reports or disclosures required by applicable law and stock exchange listing requirements;

- oversee the design, implementation, organization and performance of the Company's internal audit function (if any);

- monitor and assess, and oversee the reporting of, any material cybersecurity breaches and associated risks affecting the Company;

- help the Board oversee the Company's legal and regulatory compliance, including risk assessment; and

- provide regular reports and information to the Board.

30.    The full duties of the Audit Committee are set forth in the Company's Audit Committee Charter.[2]

### Duties Pursuant to the Company's Code of Business Conduct and Ethics

31.    The Individual Defendants, as officers and/or directors of Exicure, were also bound by the Company's Code of Business Conduct and Ethics (the "Code") which, according to the Code, sets out basic principles to guide all directors, officers, and employees of Exicure, who are required to know and conduct themselves in accordance with the Code, as well as applicable laws and regulations, and to avoid the appearance of improper behavior.

32.    Regarding disclosures, the Code states:

The integrity of our records and public disclosure depends on the validity, accuracy and completeness of the information supporting the entries to our books of account. Therefore, our corporate and business records should be completed accurately and honestly. The making of false or misleading entries, whether they relate to financial results or test results, is strictly prohibited. All records and reports should be made in a timely manner, and, when applicable, should be properly authorized and maintained.

Our accounting records are also relied upon to produce reports for our management,

---

[2] https://s1.q4cdn.com/907903764/files/governance_doc/2021/Audit_Committee_Charter.pdf.

stockholders and creditors, as well as for governmental agencies. In particular, we rely upon our accounting and other business and corporate records in preparing the reports we file with the Securities and Exchange Commission ("SEC"). These reports must provide full, fair, accurate, timely and understandable disclosure and fairly present our financial condition and results of operations. In connection with these obligations:

- no one may knowingly take or authorize any action that would cause our financial records or financial disclosure to fail to comply with generally accepted accounting principles, the rules and regulations of the SEC or other applicable laws, rules and regulations;

- everyone must cooperate fully with our Finance Department and Legal Department, as well as our independent public accountants and legal counsel, respond to their questions with candor and provide them with complete and accurate information to help ensure that our books and records, as well as our reports filed with the SEC, are accurate and complete; and

- no one should knowingly make (or cause or encourage any other person to make) any false or misleading statement in any of our reports filed with the SEC or knowingly omit (or cause or encourage any other person to omit) any information necessary to make the disclosure in any of our reports accurate in all material respects.

### Control, Access, and Authority

33. The Individual Defendants, because of their positions of control and authority as directors and/or officers of Exicure, were able to, and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Exicure.

34. Because of their advisory, executive, managerial, and directorial positions with Exicure, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of Exicure.

35. At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Exicure and was at all times acting within the course and scope of such agency.

## Reasonable and Prudent Supervision

36.     To discharge their duties, the officers and directors of Exicure were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Exicure were required to, among other things:

(a) ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b) conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c) properly and accurately guide shareholders and analysts as to the true financial and business prospects of the Company at any given time, including making accurate statements about the Company's business and financial prospects and internal controls;

(d) remain informed as to how Exicure conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e) ensure that Exicure was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

## BREACHES OF DUTIES

37.     Each Individual Defendant, by virtue of their position as a director and/or officer, owed to Exicure and its shareholders the fiduciary duties of loyalty and good faith, and the exercise

of due care and diligence in the management and administration of the affairs of Exicure, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Exicure, the absence of good faith on their part, and a reckless disregard for their duties to Exicure and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to Exicure.

38.    The Individual Defendants each breached their duties of loyalty and good faith by allowing the Individual Defendants to cause, or by themselves causing, the Company to make false and/or misleading statements that misled shareholders into believing that disclosures related to the Company's financial and business prospects were truthful and accurate when made.

39.    In addition, as a result of the Individual Defendants' illegal actions and course of conduct, the Company is now the subject of the Related Securities Class Action that alleges violations of the federal securities laws. As a result, Exicure has expended, and will continue to expend, significant sums of money to rectify the Individual Defendants' wrongdoing.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

40.    In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with, and conspired with, one another in furtherance of their wrongdoing. The Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

41.    During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to mislead shareholders into believing that the Company's business and financial prospects were better than they actually were. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively

and individually took the actions set forth herein.

42.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to: (a) disguise the Individual Defendants' violations of law, including breaches of fiduciary duties, unjust enrichment, gross mismanagement, and abuse of control; and (b) disguise and misrepresent the Company's actual business and financial prospects.

43.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully, recklessly, or negligently release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

44.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commissions of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of their overall contribution to and furtherance of the wrongdoing.

## SUBSTATIVE ALLEGATIONS

### Background of the Company

45.     Exicure is a clinical stage biotechnology company that develops therapeutics for neurology, immune-oncology, inflammatory diseases, and other genetic disorders based on its proprietary spherical nucleic acid technology.

### The Board Issues the 2021 Proxy Statement

46.     On April 22, 2021, Defendants Giljohann, Cleland, Garofalo, Hau, Muralidhar, Sassine, Sulat, and Walbert caused the Company to file its Proxy Statement for 2021 on Form DEF 14A (the "2021 Proxy Statement). In the 2021 Proxy Statement, the above-named Defendants solicited shareholder votes to elect Defendants Giljohann, Garofalo, and Sassine to the Board and to ratify on an advisory basis the appointment of KPMG LLP as the Company's independent auditor for the 2021 fiscal year. Defendants negligently issued materially misleading statements with respect to these solicited votes.

47.     The 2021 Proxy Statement contained the following list describing the duties of the Board with respect to "Risk Oversight:"

> The Board of Directors monitors and assesses key business risks directly through deliberations of the Board of Directors and also by way of delegation of certain risk oversight functions to be performed by committees of the Board of Directors. The Board of Directors regularly reviews and assesses, among other matters, the following important areas that present both opportunities and risk to the Company's business:
>
> - review and approval of the Company's annual operating and capital spending plan and review of management's updates as to the progress against the plan and any related risks and uncertainties;
>
> - ***periodic consideration of the balance of risk and opportunities presented by the Company's medium to long-term strategic plan and the potential implications of success and failure in one or more of the Company's key drug development programs;***
>
> - regular consideration of the risks and uncertainties presented by alternative clinical development strategies;
>
> - ***regular review of the progress and results of the Company's clinical development programs and early rese arch efforts, including, without limitation, the strengths, weaknesses, opportunities and threats for these programs***;
>
> - periodic review and oversight of any material outstanding litigation or threatened litigation;

- ***review and approval of material collaboration partnerships for the further development and commercial exploitation of the Company's proprietary drug development programs and technologies***;

- regular review and approval of the annual corporate goals and an assessment of the Company's level of achievement against these established goals;

- regular review of the Company's financial position relative to the risk and opportunities for the Company's business;

- periodic review of the Company's intellectual property estate; review and assessment of succession planning and performance concerns for the Section 16 officers; and

- periodic review of the Company's compensation programs.

(Emphasis added).

48.     The 2021 Proxy Statement also described additional risk oversight functions of the Board and its committees, stating as follows:

> ***The risk oversight function of the Board of Directors is also administered through various Board committees. The Audit Committee oversees the management of financial, accounting, internal controls***, disclosure controls and the engagement arrangement and regular oversight of the independent auditors. The Audit Committee also periodically reviews the Company's investment policy for its cash reserves and fraud monitoring practices and procedures, including the maintenance and monitoring of a whistleblower hotline.
>
> The Compensation Committee is responsible for the design and oversight of the Company's compensation programs. The Compensation Committee also regularly reviews and reports to the Board of Directors on succession planning for the executive officers and vice president level employees that report directly to the Chief Executive Officer.
>
> The Nominating and Corporate Governance Committee periodically reviews the Company's corporate governance practices, including certain risks that those practices are intended to address. The Nominating and Corporate Governance Committee periodically reviews the composition of the Board of Directors to help ensure that a diversity of skills and experiences is represented by the members of the Board of Directors taking into account the stage of growth of the Company and its strategic direction.
>
> In carrying out their risk oversight functions, the Board of Directors and its committees routinely request and review management updates, reports from the

independent auditors and legal and regulatory advice from outside experts, as appropriate, to assist in discerning and managing important risks that may be faced by the Company. The Board of Directors is committed to continuing to ensure and evolve its risk oversight practices as appropriate given the stage of the Company's evolution as a drug development company and the fast-paced changes in the biopharmaceutical industry. Regarding ongoing COVID-19 pandemic, our management has been meeting frequently and will continue to address concerns of our employees and business, as well as updating and communicating with the Board regularly. The full Board has oversight and has been and will continue to be engaged concerning the monitoring and identification of risks to the Company, and actions we are taking to mitigate risks related to this pandemic.

(Emphasis added).

49.     With respect to the Company's Code of Conduct, the 2021 Proxy Statement said:

We have adopted a Code of Business Conduct and Ethics that applies to all of our employees, officers and directors, including those officers responsible for financial reporting. . . . *If we make any substantive amendments to the Code of Business Conduct and Ethics or grants any waiver from a provision of the Code to any executive officer or director, we will promptly disclose the nature of the amendment or waiver on our website*.

(Emphasis added).

50.     With respect to Exicure's compensation strategy, the 2021 Proxy Statement stated that: "*Our executive compensation program is based on a pay-for-performance philosophy*. We designed our executive compensation program to align executive compensation with our business objectives and the interests of our stockholders and to attract, retain and reward executives who contribute to our success." (Emphasis added).

51.     The 2021 Proxy Statement further stated the following regarding "Annual Cash Incentive Bonuses": "Annual cash incentive bonuses provide incentive award opportunities for the achievement of performance goals established by our Compensation Committee. The payment of *awards under our 2020 annual cash incentive bonus program is subject to the attainment of specific performance goals relating to research and development* and financing." (Emphasis added).

52.     The 2021 Proxy Statement contained proposals to the Company's stockholders soliciting votes to re-elect certain members of the Board. However, the 2021 Proxy Statement misrepresented and failed to disclose and explain that: (1) the Board and its committees were not sufficiently exercising their risk oversight responsibilities, and caused Exicure to engage in the misconduct alleged herein and to issue false and misleading statements; (2) they were violating the Code of Conduct; (3) the connection between Exicure's "Pay-for-Performance" criteria "to the attainment of specific performance goals relating to research and development" incentivized the Individual Defendants to cause Exicure to engage in the misconduct alleged herein and to issue false and misleading, statements containing misreported data, so they could improperly increase their compensation; and (4) there were improprieties in the Company's XCUR-FXN preclinical program, and that due to the misconduct alleged herein, Exicure misreported data about XCUR-FXN's efficacy, resulting in the need to Exicure to suspend its preclinical program for XCUR-FXN.

53.     Due to the 2021 Proxy Statement's false and misleading elements, Company shareholders: (1) elected Defendants Giljohann, Garofalo, and Sassine to the Board, allowing them to continue breaching their fiduciary duties to the Company; and (2) ratified, in an advisory capacity, the appointment of KPMG LLP as Exicure's independent auditor for the 2021 Fiscal Year.

## Materially False and Misleading Statements Issued During the Relevant Period

54.     The Relevant Period begins on January 7, 2021, On that day, Exicure hosted a virtual R&D Day to purportedly "discuss its neuroscience pipeline, including its lead program for Friedreich's Ataxia (FA)." In the slide presentation, used in the event, and filed with the SEC, the Company stated, in relevant part:

# Friedreich's Ataxia (FA) – Progressive Neurological Disorder



- Degenerative, debilitating, life-shortening, neuromuscular disorder causing loss of coordination (ataxia) in arms and legs
- Monogenic disorder: FXN mutations result in reduced levels of frataxin
- Leads to progressive childhood disability and early death
    - Mean onset of symptoms between age 10 to 15[1]

    - Most patients wheelchair-bound within 2 decades of onset
    - Loss of coordination, neuropathy, hearing and vision loss, cardiomyopathy, diabetes
    - Most patients succumbing to disease in their 30s and 40s
- Most common inherited ataxia: ~13,500 cases across major reimbursable markets[2,3]
- No approved therapy for FA
- No therapies in late development which address the molecular cause of FA



1) Gene Review, Bidichandani SI, Delatycki MB. 2017.   2) OrpheNet, NIH, FARA.   3) US, EU28, Canada, Australia

ex|cure                                                                32

# FA Results in Rapid Neurological Deterioration and Early Mortality



**Time to Wheelchair-Dependence[1]**

FIG. 1. Kaplan-Meier curve representing the disease duration before confinement to wheelchair for typical FA, LOFA,' and vLOFA'(P < 0.001)



**Early Mortality[2]**

Fig. 3. Distribution of deaths by age. The majority of deaths occurred between ages 16 and 45.

1) Lecocq et al., 2016; Rummey et al., 2020 with similar results   2) Tsou et al., 2011   3) LOFA = Late-Onset FA, mean onset at 29 years   4) vLOFA = Very Late-Onset FA, n=30, mean onset at 50 years   5) n=180, mean onset at 13 years

ex|cure                                                                33

16

## Reduced Frataxin Expression Due To Expanded GAA Repeats Cause Neuronal Dysfunction in Friedreich's Ataxia



exicure

34

## Residual Frataxin Levels in FA Support Oligonucleotide Approach

**Frataxin Levels in Blood from  FA Patients vs Controls**

cFRDA = Classic, typical onset FA; LOFA = Late onset FA; pFRDA = heterozygous for repeat + point mutation
Whisker plot: Box outlines represent 95% CI, whiskers represent 99% CI, x = outliers beyond 99% CI
Source: Deutsch et al., 2014
1) Mean age at onset 11.3 years   2) Mean age at onset 36.7 years

**Conclusions**

- Patients with FA have substantial residual frataxin

- Residual frataxin levels support Exicure's protein upregulation approach

- "Classic", typical onset[1] FA patients with frataxin levels of ~25% of healthy control in whole blood

- Late onset[2] FA patients with 45-60% of healthy control levels, below carrier levels of 65-70%

- Differential in disease onset based on frataxin levels strongly supports therapeutic rationale for increasing frataxin to slow disease progression

exicure

35

## Frataxin Levels Are Closely Tied to Disease Outcomes in FA



**GAA Repeat Number[1] Highly Correlated with Frataxin Levels[2]**

**GAA Repeat Number Highly Correlated with Disease Outcomes[3,4]**

- Conclusion from natural history data: **A novel therapeutic delivering even small increases in frataxin levels could drive meaningfully milder phenotypes**
- Natural genetic variation in GAA repeats in FA patients enables genotype-to-phenotype correlation
- Correlation virtually identical for FXN mRNA / protein

1) "GAA Repeat Number" refers to the number of GAA repeats in the allele with the smaller repeat throughout this presentation  2) Li et al., 2015  3) Lecocq et al., 2016  4) Tsou et al., 2011

ex|cure                                                                              36

## Modified Friedreich's Ataxia Rating Scale (mFARS) is a Validated, Approvable Endpoint for Measuring Impact on Disease Progression

- The "modified FARS" (mFARS) is the clinical rating scale used as the **primary outcome measure** in most contemporary clinical studies in Friedreich's Ataxia
- mFARS score (0-93 points, higher score = greater disability) is based on a **neurological examination** of bulbar, upper limb, lower limb, and upright stability/gait functions
- **mFARS** scores are **highly correlated** with scores of the predecessor version, the **FARS**, which has been used in past studies correlating frataxin levels to disease severity



**Bulbar Function** (speech, cough, facial/tongue atrophy) – 5 pts



**Upper Limb Coordination** (finger, arms) – 36 pts



**Lower Limb Coordination** (legs, feet) – 16 pts



**Upright Stability** (sitting, walking, etc.) – 36 pts

Sources: Rummey et al., Neurol Genet 2019; www.ataxia-study-group.net

ex|cure                                                                              37



55.     On March 11, 2021 the Company announced its full year 2020 financial results and "Corporate Progress" in a press release that stated, in pertinent part:

> XCUR-FXN for Friedreich's ataxia
>
> • Announced neurology pipeline expansion during virtual R&D day presentation in January 2021
>
> • Initiated IND-enabling studies for XCUR-FXN in December 2020

56.     On May 12, 2021, Exicure announced its first quarter 2021 financial results in a press release, which also reported "Pipeline Highlights." It stated, in relevant part:

> **Neurology – XCUR-FXN**
>
> • The Company hosted a virtual R&D Day in January 2021 to discuss progress within its neurology pipeline, which included an overview of the Company's XCUR-FXN path to clinical validation for the treatment of Friedreich's Ataxia (FA).
>
> • During the first quarter of 2021, the Company continued to advance preclinical and IND-enabling studies of XCUR-FXN in FA and disclosed encouraging preclinical mouse data, demonstrating significant upregulation of XCUR-FXN components in the brain

and spinal cord. The Company believes these data support the potential for XCUR-FXN as a disease-modifying treatment for the disease.

- The Company is on track with prior guidance to submit an IND for XCURFXN in FA by year-end 2021 and expects to initiate a first-in-patient Phase 1b clinical trial of XCUR-FXN in FA in the first half of 2022.

57.   On August 12, 2021, Exicure announced its second quarter 2021 financial results in a press release, which also reported "Pipeline Highlights & Updates." It stated, in relevant part:

**XCUR-FXN – Friedreich's Ataxia**

- The Company hosted a virtual R&D Day on July 15, 2021 to present new and previously unreleased preclinical data and discuss progress with XCUR-FXN:

  o   Observed 2-3x fold change in measurable Frataxin protein in the cerebellum and dorsal root ganglia (amongst other important brain and spinal regions) in Pook800J mouse model indicating potential for disease resolution;

  o   Showed no adverse, test-related histopathological findings in repeat dose range finding rat study.

- The Company continues to expect to file for an IND for XCUR-FXN in FA by the end of 2021 and to dose the first human patient in the first half of 2022.

58.   That same day, the Company filed its quarterly report on Form 10-Q for the period ended June 30, 2021 with the SEC. Therein, Exicure stated:

We initiated IND-enabling studies for XCUR-FXN in late 2020. As discussed during our R&D day presentation in July 2021, in a completed non-GLP dose range finding study of XCUR-FXN in rats, designed to evaluate the safety profile of XCUR-FXN following intrathecal dosing, we have not observed any test article-related adverse findings and the highest dose level in this study (three repeat intrathecal (IT) injections of 782 μg each) was the no-observed-adverse-effect level (NOAEL) in this study. We expect to complete our GLP toxicology program and file an IND for XCUR-FXN in FA in the fourth quarter of 2021, and expect to initiate a first-in-patient Phase 1b clinical trial for XCUR-FXN in FA in the first half of 2022. We are collaborating closely with the Friedreich's Ataxia Research Alliance (FARA), the non-profit, charitable organization dedicated to accelerating

research leading to treatments and a cure for FA, in the design and site selection of the Phase 1b clinical trial. The Phase 1b clinical trial is designed to demonstrate safety and characterize pharmacokinetic properties of multiple ascending doses of XCUR-FXN in FA patients and inform Phase 2/3 dose selection. We are also planning to examine multiple biomarkers, including brain imaging and measurements of FXN levels in patient cerebrospinal fluid (CSF), to provide rapid read-out for target engagement and pharmacodynamic (PD) effects. We may include one or more exploratory endpoints, such as the modified Friedreich's Ataxia Rating Scale (mFARS), to prepare for a subsequent pivotal clinical trial.

59.     The above statements were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there had been certain improprieties in Exicure's preclinical program for the treatment of Friedreich's ataxia; (2) that, as a result, there was a material risk that data from the preclinical program would not support continued clinical development; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## The Truth Emerges

60.     On November 15, 2021, Exicure filed a Form 12b-25 with the SEC stating that it could not timely file its quarterly report for the period ended September 30, 2021. It explained that the Company was investigating "a claim made by a former Company senior researcher regarding alleged improprieties that researcher claims to have committed with respect to the Company's XCUR-FXN preclinical program for the treatment of Friedreich's ataxia."

61.     On this news, the Company's stock price fell $0.30, or 28%, to close at $1.07 per share on November 16, 2021, on unusually heavy trading volume.

62.     The above statements identified above were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.

Specifically, Defendants failed to disclose to investors: (1) that there had been certain improprieties in Exicure's preclinical program for the treatment of Friedreich's ataxia; (2) that Exicure lacked effective internal controls over the collection, analysis, and dissemination of data relating to Exicure's preclinical program for the treatment of Friedreich's ataxia; (3) that, as a result, the Company misreported the efficacy of XCUR-FXN in various public presentations and SEC filings from (at least) January 7, 2021 through August 12, 2021; (4) that, as a result, the Company would have to suspend its development of XCUR-FXN for the treatment of Friedreich's ataxia; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

63.    On November 19, 2021, before the market opened, Exicure issued a press release titled "Exicure, Inc. Reports Third Quarter 2021 Financial Results and Corporate Progress." Therein, Exicure disclosed that "[t]he Audit Committee has retained external counsel to conduct an internal investigation" regarding the claim by a former Company senior researcher regarding alleged improprieties with respect to the Company's XCUR-FXN preclinical program, and that "[t]he Company is currently unable to predict the timing or outcome of the investigation." In greater part, the Company stated:

> Exicure, Inc.® (NASDAQ: XCUR), a pioneer in gene regulatory and immunotherapeutic drugs utilizing spherical nucleic acid (SNA™) technology, today reported financial results for the quarter ended September 30, 2021 and provided an update on corporate progress.
>
> "I would first like to recognize the amazing work from the high-quality team members at Exicure as we continue to invest into driving value from our SNA platform technology, most notably being recognized in the third quarter through the consummation of another strategic partnership which brought in additional non-dilutive capital," said Exicure CEO Dr. David Giljohann. "It is important to note our SNA platform is grounded in 15 years of intensive and rigorous scientific development across industry and academia. ***Although a recent claim of***

*improprieties from one researcher, specifically related to our FXN program, are concerning, we are highly confident in our platform technology which delivers DNA and RNA into cells and tissues more effectively.* I remain proud of the team members at Exicure who continue to work hard to bring new medicines to patients in need."

**Corporate Updates**

As previously reported, on November 9, 2021, the Audit Committee of the Board of Directors of the Company was notified of a claim made by a former Company senior researcher regarding alleged improprieties that researcher claims to have committed with respect to the Company's XCUR-FXN preclinical program for the treatment of Friedreich's ataxia. ***The Audit Committee has retained external counsel to conduct an internal investigation of the claim. The Company is currently unable to predict the timing or outcome of the investigation.***

**Pipeline Highlights & Updates**

**Neurology**

. . .

**XCUR-FXN-Friedreich's Ataxia**

Exicure remains committed to maintaining its development plans and to pursuing its business strategy in the best interests of its stockholders as well as the patients it looks to serve; however, it acknowledges that, ***at this point in time, it is unable to determine the potential impact of the asserted claim on its research and development activities or the timing of completion of its current research and development of its XCUR-FXN preclinical program for the treatment of FA, as the investigation of the asserted claim remains ongoing.***

(Emphasis added).

64.     On this news, the Company's stock price fell $0.198, or 30%, to close at $0.46 per share on November 19, 2021, on unusually heavy trading volume.

65.     The above statements were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there had been certain improprieties in Exicure's preclinical program for the treatment of Friedreich's ataxia; (2) that

Exicure lacked effective internal controls over the collection, analysis, and dissemination of data relating to Exicure's preclinical program for the treatment of Friedreich's ataxia; (3) that, as a result, the Company misreported the efficacy of XCUR-FXN in various public presentations and SEC filings from (at least) January 7, 2021 through August 12, 2021; (4) that, as a result, the Company would have to suspend its development of XCUR-FXN for the treatment of Friedreich's ataxia; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

66.     On December 10, 2021, after the market closed, Exicure issued a press release titled "Exicure, Inc. Announces Results of Internal Investigation and Implementation of Strategic Measures to Reduce Cash Burn and Prioritize Pipeline Focus." Therein, Exicure announced the "results of its previously disclosed independent internal investigation" and disclosed that "misreported data was included in various public presentations and SEC filings from as early as January 7, 2021 through as late as August 12, 2021," that the data related to the efficacy of XCUR-FXN. The Company also announced that in response the wrongdoing, the Company was implementing "[a] staggered workforce reduction of approximately 50%, expected to be completed by January 2022," and an "[i]ndefinite suspension of further development of the Company's XCUR-FXN program for the treatment of Friedreich's ataxia." The Company further disclosed that Douglas Feltner, M.D., the Company's Chief Medical Officer, "has agreed to assist in the wind own of the cavrotilimod and XCUR-FXN programs and will depart the Company on January 31, 2022." Exicure also replaced its Chief Executive Officer, Dr. David Giljohann, who would serve as Chief Technology Officer through January 31, 2022. In greater part, the Company stated:

Exicure, Inc.®(NASDAQ: XCUR) announced the results of its previously disclosed independent internal investigation and a number of strategic actions aimed to reduce cash spend and prioritize the Company's therapeutic pipeline.

The Audit Committee of the Board of Directors of the Company (the "Audit Committee") today announced the findings of the internal investigation initiated and overseen by the Audit Committee and conducted by outside counsel in connection with alleged improprieties that Grant Corbett, Ph.D., the Company's former Group Lead of Neuroscience, claimed to have committed with respect to the Company's XCUR-FXN preclinical program.

The results of the investigation are summarized below.

- Beginning in the autumn of 2020, *Dr. Corbett misreported raw data from certain research and development experiments related to XCUR-FXN*;

- Dr. Corbett misreported the results of at least three different experiments that were conducted through at least February 2021;

- The misreported data related solely to efficacy rather than safety of XCUR-FXN;

- *The misreported data was included in various public presentations and SEC filings from as early as January 7, 2021 through as late as August 12, 2021;*

- Dr. Corbett acted alone in misreporting the data, without the assistance or knowledge of anyone else at the Company, including Company management and other research and development employees and did not inform anyone at the Company of his actions until his resignation in November 2021;

- Company management reasonably relied on Dr. Corbett's analysis when making public statements that included Dr. Corbett's misreported data; and

- No other Company program was impacted by Dr. Corbett's misreporting of the XCUR-FXN data.

After a review of the Audit Committee's findings from the investigation and in combination with a previously initiated strategic review of the Company's business plans and objectives and its existing cash resources, the Company's Board of Directors has implemented the following approved plan:

- *A staggered workforce reduction of approximately 50%, expected to be completed by January 2022;*

- *Discontinuation of further enrollment and the ethical wind down of the Company's ongoing Phase lb/2 cavrotolimod (AST-008) clinical trial in patients with solid tumors*

- *Indefinite suspension of further development of the Company's XCUR-FXN program for the treatment of Friedreich's ataxia*

- *Restructuring and realignment of the Company's executive team as*

*follows, effective today:*

- o Brian C. Bock, the Company's former Chief Financial Officer, has been appointed as the Company's President and Chief Executive Officer, replacing David Giljohann, and was appointed as a member of the Board.

- o ***Dr. David Giljohann, the Company's former Chief Executive Officer, has resigned from the Board and will serve as Chief Technology Officer through January 31, 2022.***

- o Matthias Schroff, the Company's former Chief Operating Officer, has assumed the new role of Chief Scientific Officer;

- o Sarah Longoria, the Company's former Vice President of Human Resources has been appointed as the Company's Chief Human Resources Officer and Chief Compliance Officer; and

- o ***Douglas Feltner, M.D., the Company's Chief Medical Officer, has agreed to assist in the wind down of the cavrotolimod and XCUR-FXN programs and will depart the Company on January 31, 2022.***

Exicure expects to realize approximately $6.0 million in employee related cost savings in 2022, plus additional costs relating to the elimination of the cavrotolimod and XCUR-FXN programs. ***The Company estimates that it will incur total expenses relating to the restructuring of approximately $1.2 million, consisting of severance and termination-related costs and expects to record a significant portion of these charges in the fourth quarter of 2021***.

The Company intends to align its research and development resources to support (i) the development of its preclinical program targeting SCN9A for neuropathic pain, (ii) the continued advancement of its partnered programs with Ipsen Biopharm Limited to develop SNA-based treatments in neuroscience targeting Huntington's disease and Angelman syndrome, (iii) its continued advancement of its partnered program with AbbVie to develop SNA-based treatments for hair loss disorders, as well as (iv) the continued research and development of other undisclosed therapeutic product candidates.

The Company also announced a prepayment of $10.0 million of its outstanding loans under its senior secured term loan debt facility with MidCap Financial Trust, as agent, and Silicon Valley Bank (SVB), leaving a remaining outstanding balance of $7.5 million, which will remain subject to the existing terms under the loan facility.

"This has been a difficult time for all of our stakeholders and Exicure employees. I want to first thank the employees impacted by our workforce reduction for their significant contributions in pursuing treatments for patients with unmet medical needs and wish them success in their future endeavors. ***Although this unfortunate event will have residual effects***, I strongly believe there is great value to be unlocked at Exicure with our proprietary Spherical Nucleic Acid (SNA)

technology, and I look forward to advancing our promising programs in pain and other neuroscience diseases and continuing to closely work with our partners to develop innovative therapies for the treatment of genetic disorders," stated Brian Bock, President and Chief Executive Officer, Exicure.

"On behalf of the Board of Directors, I want to thank David Giljohann for his discoveries and contributions to the development of our proprietary SNA architecture, commitment in building Exicure from the ground up and leadership during his time at the Company," said Tim Walbert, Chairman of the Board, Exicure. "We look forward to working closely with Brian Bock as he assumes leadership of the Company. The Board believes Brian's disciplined approach as well as his financial and investment banking background make him well suited to develop the new strategic path for Exicure and navigate the Company through the next phase in the Company's evolution."

(Emphasis added).

67.    On this news, the Company's stock price fell $0.185, or 40.1 %, to close at $0.27 per share on December 13, 2021 (the next trading day following December 10, 2021), on unusually heavy trading volume.

## DAMAGES TO THE COMPANY

68.    Exicure has been, and will continue to be, severely damaged and injured by the Defendants' misconduct.  As a direct and proximate result of the Defendants' conduct, Exicure has been seriously harmed and will continue to be.  Such harm includes, but is not limited to:

    a.    costs incurred in compensation and benefits paid to Defendants that breached their fiduciary duties and violated federal securities laws;

    b.    substantial loss of market capital;

    c.    costs already incurred and to be incurred defending the Related Securities Class Action and;

    d.    any fines or other liability resulting from the Company's violations of federal law.

69.    In addition, Exicure's business, goodwill and reputation with its business partners,

regulators and shareholders have been gravely impaired.  The credibility and motives of management are now in serious doubt.

70.     The wrongdoing complained of herein has irreparably damaged Exicure's corporate image and goodwill.  For at least the foreseeable future, Exicure will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Exicure's ability to raise equity capital or debt on favorable terms in the future is now impaired.

**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

71.     Plaintiff brings this action derivatively in the right and for the benefit of Exicure to redress injuries suffered, and to be suffered, by Exicure as a direct result of violations of federal securities laws by the Defendants.  Exicure is named as a Nominal Defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

72.     The Board of Exicure, at the time this action was commenced, consisted of Defendants Garofalo, Schroff, Sulat, Cleland, and Muralidhar, a total of 5 individuals.

73.     Plaintiff has not made any demand on the Board to institute this action because a pre-suit demand on the Exicure Board would be futile, and therefore, excused.  This is because a majority of the Board faces a substantial likelihood of liability as a result of their scheme and false and misleading statements and/or omissions of material adverse facts which render them unable to impartially consider a demand to pursue the wrongdoing alleged herein.

74.     Each of the Director Defendants were responsible for reviewing and approving the Company's public statements made in press releases and financial filings with the SEC throughout the Relevant Period. By authorizing the false and misleading statements and material omissions

and described above during the Relevant Period concerning the Company's business and prospects, each of the Director Defendants knowingly faces a substantial likelihood of liability for their participation in the illicit acts alleged herein.

75.     Upon information and belief, in their capacity as members of the Company's Board, the Director Defendants were privy to specific information related to the Company's business and financial prospects, which would reasonably put them on notice that the statements they were making were in fact false and misleading.

### Demand is Futile as to Defendant Schroff Because His Principal Professional Occupation as the Company's CEO and President

76.     Defendant Schroff is and has been the CEO and a director of the Company since February 2022. Defendant Schroff was previously the Company's Chief Scientific Officer from December 2021 to January 2022 and the Company's Chief Operating Officer from April 2018 to December 2021. The Company does not claim that Defendant Schroff is an independent director and because his primary source of income and primary employment is his employment as CEO of Exicure and his professional reputation is inextricably bound to his role at Exicure, Defendant Schroff is incapable of acting independently and demand is futile upon him.

### Demand is Futile as to the Members of the Audit Committee

77.     Demand is futile as to Defendants Garofalo and Sulat (the "Audit Committee Defendants") as members of the Audit Committee during the Relevant Period for their knowing failure to fulfill their responsibilities.

78.     The Board of Directors adopted an Audit Committee Charter, setting forth the responsibilities of the Audit Committee.  The Audit Committee Charter notes that the purpose of the Audit Committee shall be to "assist the Board in its general oversight of the Company's accounting and financial reporting processes, audits of the financial statements, internal control

and audit functions, and compliance with legal and regulatory requirements."

79.     Upon information and belief, in their capacity as members of the Audit Committee, the Audit Committee Defendants were privy to specific information related to the Company's business, operations, and prospects, which would reasonably put them on notice that the statements set forth above in the Company's public filings were materially false and misleading when made.

80.     The Company's public filings concerning the Company's business and prospects during the Relevant Period contained materially misleading information and/or omitted material information. In their capacity as members of the Audit Committee, the Audit Committee Defendants were charged with ensuring that these reports did not contain such materially misleading information.  By allowing documents to be filled with misleading information, the Audit Committee Defendants face a sufficiently significant likelihood of liability so as to render them interested.  Accordingly, the Audit Committee Defendants cannot adequately independently consider a demand.

## Demand is Futile as to the Director Defendants

81.     Plaintiff has not made any demand on the Board to institute this action because a pre-suit demand on the Company's Board would be futile, and therefore, excused.  This is because a majority of the Board faces a substantial likelihood of liability as a result of their knowing toleration of the above described false and misleading statements and omissions of material adverse facts, which render them unable to impartially consider a demand to pursue the wrongdoing alleged herein.

82.     Upon information and belief, in their capacity as members of the Company's Board, the Director Defendants were privy to specific information related to the Company's business and financial prospects, which would reasonably put them on notice that the statements they were

making were in fact false and misleading.

83.     Each of the Director Defendants were responsible for reviewing and approving the Company's public statements made in press releases and financial filings with the SEC throughout the Relevant Period.  By authorizing the false and misleading statements and material omissions and described above during the Relevant Period concerning the Company's business and prospects, each of the Director Defendants knowingly faces a substantial likelihood of liability for their participation in the illicit acts alleged herein.

84.     Accordingly, the Director Defendants face a sufficiently substantial likelihood of liability such as to create a reasonable doubt as to their impartiality to consider a demand to sue themselves in the present action.

## COUNT I

### Against Defendants Giljohann, Cleland, Garofalo, Hau, Muralidhar, Sassine, Sulat, and Walbert for Violation of Section 14(a) of the <u>Securities Exchange Act of 1934 and Rule 14a-9 Promulgated Thereunder</u>

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     Rule 14a-9, promulgated pursuant to §14(a) of the Securities Exchange of 1934, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Company's 2021 Proxy Statement violated §14(a) and Rule 14a-9 because they omitted material information regarding the wrongdoing of defendants as detailed above and included by reference materially false and misleading financial statements.

87.     Defendants Giljohann, Cleland, Garofalo, Hau, Muralidhar, Sassine, Sulat, and Walbert negligently issued, caused to be issued, and participated in the issuance of materially false and misleading written statements to stockholders that were contained in the 2021 Proxy Statement. The 2021 Proxy Statement contained proposals to the Company's stockholders that they vote to reelect certain members of the Board. The 2021 Proxy Statement misrepresented and failed to disclose and explain that: (1) the board and its committees were not sufficiently exercising their risk oversight responsibilities, and caused Exicure to engage in the misconduct alleged herein and to issue false and misleading statements; (2) they were violating the Code of Conduct; (3) the connection between Exicure's "Pay-for-Performance" criteria "to the attainment of specific performance goals relating to research and development" incentivized the Individual Defendants to cause Exicure to engage in the misconduct alleged herein and to issue false and misleading, statements containing misreported data, so they could improperly increase their compensation; and (4) there were improprieties in the Company's XCUR-FXN preclinical program, and that due to the misconduct alleged herein, Exicure misreported data about XCUR-FXN's efficacy, resulting in the need to Exicure to suspend its preclinical program for XCUR-FXN.

88.     By reasons of the conduct alleged herein, Defendants Giljohann, Cleland, Garofalo, Hau, Muralidhar, Sassine, Sulat, and Walbert violated Section 14(a) of the Exchange Act.

89.     In the exercise of reasonable care, Defendants should have known that the 2021 Proxy Statement contained misleading information and/or omitted material information.

90.     The misrepresentations and omissions in the 2021 Proxy Statement were material to Company shareholders in voting on the 2021 Proxy Statement.

91.     The Company was damaged as a result of Defendants' material misrepresentations and omissions in the 2021 Proxy Statement.

## COUNT II

### Against the Securities Action Defendants for
### Contribution Under Section 10(b) of the Exchange Act,
### <u>Rule 10b-5 Promulgated Thereunder, and/or Section 20(a) of the Exchange Act</u>

92.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

93.     As a result of the conduct and events alleged above, Exicure has been named as a defendant in the Related Securities Class Action brought on behalf of Exicure shareholders in which it is a joint tortfeasor in claims brought under Section 10(b) of the Securities and Exchange Act and Rule 10(b)-5 promulgated thereunder.

94.     Federal law provides Exicure with a cause of action against other alleged joint tortfeasors under Rule 10b-5.  In particular, under the Supreme Court's decision in *Musick, Peeler & Garrett v. Employers Insurance of Wausau*, 508 U. S. 286, Exicure has a federal law right of contribution against joint tortfeasors under Rule 10b-5.  Section 21D(f) of the Securities and Exchange Act further sets forth specific provisions entitling Exicure to contribution against all joint tortfeasors under Rule 10b-5, regardless of whether they have been named as defendants in the currently pending Related Securities Class Action, and sets forth specific rules regarding the determination of claims for such contribution.

95.     Accordingly, Plaintiff, on behalf of Exicure, hereby claims contribution against the Securities Action Defendants, each of whom has been named in the currently pending Related Securities Class Action as a joint tortfeasor with Exicure under Rule 10b-5, or if joined in such actions, would be liable for the same damages as Exicure.

96.     Exicure claims no right to indemnification under the federal securities laws from them in this count, but rather only claims contribution.

**Allegations Regarding the Securities Action Defendants**

97.     Throughout the Relevant Period, the Securities Action Defendants caused the Company to issue false and misleading statements and/or omit material information in public statements and/or Company filings concerning the Company's business and financial prospects. These statements were materially misleading to persons who purchased Exicure securities during the Relevant Period.

98.     Specifically, during the Relevant Period, the Securities Action Defendants made or allowed the Company to make false and/or misleading statements and/or failed to disclose that: (i) that there had been certain improprieties in Exicure's preclinical program for the treatment of Friedreich's ataxia; (ii) that, as a result, there was a material risk that data from the preclinical program would not support continued clinical development; and (iii) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

99.     The plaintiffs in the Related Securities Class Action allege that they relied, directly or indirectly, upon these false statements and misleadingly omissive disclosures in purchasing Exicure securities, and, as a result, suffered damages because value of their investments was distorted by the false and materially omissive statements, and they purchased such securities at such distorted prices.

100.    The damages suffered by said investors were caused by reason of the fact that (i) they were induced to purchase said securities by the false and misleading statements alleged herein, and (ii) the reveal of the true nature of the Company's business and prospects resulted in the decrease in price of its securities, causing the value of shareholders investments to drop.

101.    The plaintiffs in the Related Securities Class Action were unaware of the false and

misleading nature of said statements and omissive disclosures.

102.    When the Securities Action Defendants signed off on or made the false statements and omissive disclosures detailed herein, they had actual knowledge that they were false and misleading.  As alleged in detail herein, due to their positions as employees and/or directors of Exicure, the Securities Action Defendants were privy to information regarding the Company's business and financial prospects and would have been aware that the statements made were in fact false and misleading when made.

103.    Accordingly, the Securities Action Defendants are liable for damages under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and, if Exicure were to be held liable in the Related Securities Class Action, the Securities Action Defendants would be liable to it for contribution.  Plaintiff hereby derivatively claims such right of contribution on behalf of Exicure.

**Allegations Regarding the Securities Action Defendants as Control Persons**

104.    In acting as alleged above, the Securities Action Defendants were acting as authorized agents of Exicure in their roles as directors and/or employees.  Because of their positions of control and authority as senior officers and/or directors, the Securities Action Defendants were able to, and did, control the contents of the various reports, press releases and public filings disseminated by the Company throughout the Relevant Period, as alleged herein.

105.    The Securities Action Defendants were "controlling persons" of Exicure within the meaning of Section 20(a) of the Exchange Act, and, accordingly, the Securities Action Defendants could be held liable to the plaintiffs in the Related Securities Class Action.  Were the Company to be held liable in said Related Securities Class Action, the Securities Action Defendants would be liable to it for contribution.

106.    Plaintiff hereby derivatively claims such right of contribution on behalf of Exicure.

## COUNT III

### Against the Individual Defendants for Breaches of Fiduciary Duty

107.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

108.    The Individual Defendants owed and owe Exicure fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe Exicure the highest obligation of good faith, loyalty, and due care.

109.    The Individual Defendants have violated and breached their fiduciary duties of good faith, loyalty, and due care by causing or allowing the Company to disseminate to Exicure shareholders materially misleading and inaccurate information through the Company's SEC filings throughout the Relevant Period.  These actions could not have been a good faith exercise of prudent business judgment.

110.    During the course of the discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet the Individual Defendants caused Exicure to engage in the conduct complained of herein which they knew had an unreasonable risk of damage to the Company, thus breaching their duties owed to Exicure and its shareholders.  As a result, the Individual Defendants grossly mismanaged the Company.

111.    As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

112.    Plaintiff, on behalf of Exicure, has no adequate remedy at law.

**COUNT IV**

**<u>Against the Individual Defendants for Unjust Enrichment</u>**

113.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

114.    By his wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Exicure.

115.    The Individual Defendants were unjustly enriched as a result of the compensation they received while breaching their fiduciary duties owed to Exicure.

116.    Plaintiff, as a shareholder and representative of Exicure, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants from their wrongful conduct and breaches of fiduciary duty.

117.    Plaintiff, on behalf of Exicure, has no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment in the Company's favor against all Defendants as follows:

A.    Declaring that Plaintiff may maintain this action on behalf of Exicure and that Plaintiff is an adequate representative of the Company;

B.    Determining and awarding to Exicure the damages sustained by it as a result of the violations set forth above from each of the Defendants, jointly and severally, together with interest thereon;

C.    Directing Exicure and the Director Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with

applicable laws and to protect Exicure and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's By-Laws or Articles of Incorporation; and the following actions as may be necessary to ensure proper Corporate Governance Policies:

>   (1) a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

>   (2) a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

>   D.     Determining and awarding to Exicure exemplary damages in an amount necessary to punish Defendants and to make an example of Defendants to the community according to proof at trial;

>   E.     Awarding Exicure restitution from Defendants, and each of them;

>   F.     Awarding Exicure Contribution from the Securities Action Defendants, and each of them;

>   G.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

>   H.     Granting such other and further equitable relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated: April 25, 2022                          BIELLI & KLAUDER, LLC

                                               /s/ *Ryan M. Ernst*
                                               Ryan M. Ernst (#4788)
                                               1204 N. King Street
                                               Wilmington, DE 19801
                                               Tel: (302) 803-4600
                                               rernst@bk-legal.com

                                               Joshua M. Lifshitz
                                               LIFSHITZ LAW PLLC
                                               1190 Broadway
                                               Hewlett, New York 11557
                                               Telephone: (516) 493-9780
                                               Facsimile: (516) 280-7376

                                               *Attorneys for Plaintiffs*